**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRADLEY STEPHEN COHEN, an individual, and COHEN ASSET MANAGEMENT, INC., a California corporation,<br><br>Plaintiffs,<br>vs.<br><br>BERKLEY NATIONAL INSURANCE COMPANY,<br><br>Defendant. | Case No.: 2:17-cv-00057-GMN-GWF<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss, (ECF No. 15), filed by Defendant Berkley National Insurance Company ("Defendant"). Plaintiffs Bradley Stephen Cohen ("Cohen") and Cohen Asset Management, Inc. ("CAM") (collectively "Plaintiffs") filed a Response, (ECF No. 17), and Defendant filed a Reply, (ECF No. 18). For the reasons discussed below, the Court **GRANTS** Defendant's Motion.

**I.     BACKGROUND**

This case arises out of Plaintiffs trying to recover from Defendant the judgment awarded to them in a prior jury trial. Specifically, Plaintiffs had previously sued Northwest Territorial Mint, LLC ("Northwest"), Northwest's owner and president Ross B. Hansen ("Hansen"), and Northwest's employee Steven Firebaugh ("Firebaugh") (collectively "Northwest defendants") for, *inter alia*, defamation per se and false light invasion of privacy. (Compl. ¶ 1, ECF No. 1); *see Cohen v. Hansen*, Case No. 2:12-cv-01401-JCM-PAL (D. Nev. March 1, 2016) (the "underlying case"). Leading up to and during the underlying case, Defendant insured Northwest defendants with primary and umbrella policies that provided liability coverage for damages from certain lawsuits. (Compl. ¶¶ 8–10).

In the underlying case, Northwest defendants "created and published two websites . . . that contained false and defamatory statements" about Plaintiffs. (*Id.* ¶ 22). Plaintiffs alleged that these websites, *inter alia*, compared Cohen "to the notorious fraud and Ponzi scheme perpetrator Bernie Madoff and implied that [Plaintiffs] are financial fraudsters." (*Id.*). Ultimately, the underlying case proceeded to trial, and on February 17, 2016, a jury "returned a unanimous verdict in the underlying [case] in favor of Cohen, awarding Cohen damages totaling $38,300,000 against [Northwest defendants]." (*Id.* ¶ 31).

On April 1, 2016, Northwest filed a petition for Chapter 13 bankruptcy. (*Id.* ¶ 33). On May 18, 2016, Plaintiffs contacted Defendant informing Defendant of the verdict and judgment entered against Northwest defendants and requested that Defendant "confirm that it would pay the [p]olicies' limits to Cohen." (*Id.* ¶ 34). Plaintiff asserts that on June 17, 2016, Defendant "sent a letter to Cohen's counsel refusing to pay the judgment against its insureds." (*Id.* ¶ 35).

Pursuant to this, Plaintiffs filed their Complaint on January 16, 2017, alleging a single cause of action for breach of contract. (*Id.* ¶¶ 39–43). On February 27, 2017, Defendant filed the instant Motion to Dismiss seeking to dismiss Plaintiffs' claims pursuant to Northwest defendants' adjudged conduct not being covered by the insurance policies. (Mot. to Dismiss ("MTD") 5:10–15, ECF No. 15).

## II. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the Court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

In their Complaint, Plaintiffs allege that Defendant "had a duty under the [p]olicies, the law, and the insurance industry custom, practices and standards, to pay the judgment in the underlying lawsuit against its insureds and in favor [of] Cohen at least to the extent of the [p]olicies' limits of liability." (Compl. ¶ 41, ECF No. 1). Plaintiffs continue that Defendant "breached its duties under the [p]olicies by, among other things, failing and refusing to pay any portion of the judgment in the underlying lawsuit against its insureds and in favor of Cohen." (*Id.* ¶ 42).

The Nevada Supreme Court interprets insurance policies "from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993); *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014). If an insurance policy is unambiguous, the Nevada Supreme Court interprets it according to the plain meaning of its terms. *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).

Clauses providing coverage are broadly interpreted "so as to afford the greatest possible coverage to the insured, [and] clauses excluding coverage are interpreted narrowly against the insurer." *Nat'l Union Fire Ins. Co. of the State of Pa., Inc. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984). Any exclusion must be narrowly tailored so that it "clearly and distinctly communicates to the insured the nature of the limitation, and specifically delineates what is and is not covered." *Griffin v. Old Republic Ins. Co.*, 133 P.3d 251, 255 (Nev. 2006). To preclude coverage under an insurance policy's exclusion provision, an insurer must: (1) draft the exclusion in "obvious and unambiguous language;" (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary

provision; and (3) establish that the exclusion plainly applies to the particular case before the court. *Century Sur. Co.*, 329 P.3d at 616.

Here, Defendant seeks to dismiss Plaintiffs' claim because Plaintiffs' damages were "awarded based upon conduct amounting to fraud, oppression and malice" and "are clearly not covered by the [p]olicies." (MTD 2:16–17). Defendant's primary policy to Northwest provides the following coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(Ex. A to Compl. at 12, ECF No. 1-1). Defendant's primary and umbrella policies include the following exclusion:

> This insurance does not apply to:
>
> (a) Knowing Violation of Rights of Another
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
>
> (b) Material Published with Knowledge of Falsity
> "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

(*See id.* at 12, 68) (the "Policies"). Based on these Policies, Defendant alleges that the exclusions require "an intentional act by an insured with knowledge that the act would violate the rights of another person and would inflict a personal and advertising injury." (MTD 8:7–9). Defendant asserts that because the jury in the underlying case found that each Northwest

defendant engaged in malicious, oppressive, and fraudulent conduct, "the knowledge requirement has been satisfied for the application of the above-stated exclusions." (*Id.* 8:13–14).

In response, Plaintiffs argue that "[o]nly two causes of action went to the jury—defamation per se and false light invasion of privacy." (Resp. 7:28–8:1, ECF No. 17). Plaintiffs continue that "[n]either cause of action required [Plaintiffs] to prove that Northwest, [ ] Hansen, or [ ] Firebaugh either knew their acts would violate the rights of another or knew of the falsity of published materials." (*Id.* 8:1–3).

Plaintiffs do not attest that the policies are ambiguous, and the Court agrees that they are not. The Court will therefore interpret the policy according to the plain meaning of its terms. *See Powell*, 252 P.3d at 672. Additionally, this conclusion meets the first prong of the *Century* test. *See Century Sur. Co.*, 329 P.3d at 616 (holding that to enforce an exclusion of a policy, the insurer must show that the exclusion was drafted in obvious and unambiguous language).

The second prong of the *Century* test requires the insurer to "demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision." *Id.* Here, Defendant has met its burden. The policy excludes coverage of the insured "with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" (Ex. A to Compl. at 12, 68). Defendant avers that this section of the Policy "requires an intentional act by an insured with knowledge that the act would violate the rights of another person and would inflict a personal and advertising injury." (MTD 8:7–9). The Policies therefore apply when an actor performed a violation to another with some level of intent amounting to "knowledge." The Court finds that this is the only reasonable interpretation of the provision. Therefore, the second prong is met.

Finally, the insurer must establish that "the exclusion plainly applies to the particular case before the court." *Century Sur. Co.*, 329 P.3d at 616. Plaintiffs' complaint in the

underlying suit alleged that the Northwest defendants posted "a defamatory and malicious website" and that the website "was an intentionally false and disparaging publication." (Ex. C to Compl. at 103). Plaintiff contended in its defamation per se claim that Northwest defendants had "knowingly and intentionally engaged in conduct of a malicious, oppressive, or fraudulent nature and have knowingly made false statements of and concerning Plaintiffs." (*Id.* at 122–23). Moreover, the jury in the underlying case further specified in their findings of liability that they found each Northwest defendant "engaged in the wrongful conduct upon which [the jury] base[s] [its] above finding of liability for damages" with fraud, oppression, and malice. (*See* Ex. D to Compl. at 134, 136, 138, 140, 142, 144, 146, 148, 150).

Based off of Plaintiffs' own allegations and the findings of the jury in the underlying case, the Court holds that the Policies apply to this case. In order for the jury to have found punitive damages, Plaintiffs at trial must have proven that the Northwest defendants committed fraud, oppression, or malice "by clear and convincing evidence." Nev. Rev. Stat. § 42.005(1) (" . . . where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant."). Although Plaintiffs assert that defamation per se and false light do not require intent, and those were the only issues at trial, the jury still found fraud, oppression, and malice with each verdict. Further, the Policies do not require that a final judgment be found based on intentional conduct, but just that such conduct occurred. Moreover, a reasonable layperson would be able to find that knowledge of a violation is implicit in the findings of fraud, oppression, and malice. Because the jury uniformly found this against all Northwest defendants based on the facts presented to them at trial, Northwest defendants acted intentionally, triggering the Policies to apply here.

Plaintiffs argue in their Response that the findings of fraud, oppression, and malice should only apply to the punitive damages. (*See* Resp. 2:1-5). However, the Court holds that the Policies do apply to the entire judgment based on the facts alleged in the instant case's Complaint, the facts alleged in the underlying case's complaint, and the determinations at trial. Accordingly, the Court grants Defendant's Motion to Dismiss.

### A. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Here, the Court finds that Plaintiffs' pleadings could not be cured by the allegation of other facts. To allow Plaintiffs to amend their Complaint to allege facts that are in direct contradiction to the facts alleged in the underlying case and the jury's judgment in the underlying case would be futile. Accordingly, the Court dismisses Plaintiffs' breach of contract claim with prejudice.

///

///

///

///

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 15), is **GRANTED**. Plaintiffs' sole breach of contract cause of action is **DISMISSED with prejudice**.

The Clerk of the Court shall close the case.

**DATED** this __6__ day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge